[Civ. No. 1557. Fourth Appellate District.—April 23, 1936.]

S. J. SHERER et al., Respondents, v. THE CITY OF LAGUNA BEACH (a Municipal Corporation), Appellant.

Milburn G. Harvey for Appellant.

William J. Locke, Kirkbride, Wilson & Brooks and Leslie F. Kimmel for Respondents.

MARKS, J.—This is an action to recover damages suffered by plaintiffs by reason of the establishment of the grade on High Drive in the defendant city and the lowering of the level of the roadway from three to eight feet in front of their property. Plaintiffs had judgment and defendant has appealed.

Defendant is a municipal corporation of the sixth class. High Drive is a public street of that city. Between October 15, 1931, and March 15, 1932, defendant instituted and carried through to completion a proceeding under the Improvement Act of 1911, as amended (Stats. 1931, p. 1568, Act No. 8199, Deering's Gen. Laws, 1931), to establish the official grade on, and to grade and improve High Drive in front of plaintiffs' property. The resolution of intention specifically referred to the grades to which the work was to be done and directed attention to the plans, profiles and cross-sections

showing the grades upon which the improvements were to be constructed. The notice giving the time and place of hearing of objections or protests also specifically specified objections "to the proposed grades". No question is raised as to the sufficiency or legality of any part of the proceedings in so far as they affected property within the improvement district and within the city so we will assume their correctness.

Plaintiffs did not file or make any written or oral protest to the improvement or the grades upon which it was to be constructed at any time before the completion of the work. Their first objection to any part of it was in the form of a claim or demand against the defendant, probably in March, 1932, whereby they claimed damages to the portion of their property lying outside the improvement district and outside the city limits. The claim was rejected and this action followed.

At the time of the improvement, plaintiffs owned three lots, two of which they maintain were affected by the grades established for High Drive. For the purpose of convenience these lots were designated at the trial by the numbers 1, 2 and 3. We will use the same numbers in our discussion of the case. Lot 1 had an easterly and westerly frontage of 55 feet and a depth of 122.28 feet. Lot 2 adjoined lot 1 on the west and had dimensions of 100 by 100 feet. These lots were outside the exterior boundaries of the improvement district and the boundaries of the city. Lot 3 adjoined lot 1 on its southerly side and connected it with High Drive. The length of its westerly boundary is 25.74 feet. Its southerly boundary corresponded with the northerly line of High Drive. It furnished plaintiffs with their only means of ingress and egress to and from lot 1, upon which was situated their residence and garage, and lot 2 which was the site of their garden. Prior to the improvement of High Drive plaintiffs maintained a driveway which led from High Drive northerly to within a few feet of the northerly line of lot 3. A turntable was constructed at the northerly end of this driveway principally in the southwesterly corner of lot 1 with its southerly edge projecting slightly over onto lot 3. They also maintained a stairway leading across lot 3 from lot 1 to High Drive. When the grade of High Drive was established several feet below the former level of the roadway it became necessary to

abandon the driveway we have just described as its increased grade rendered it too steep for safe travel. The stairway was also abandoned or reconstructed. Plaintiffs purchased lot 4. This lot is between the easterly half of lot 2 and High Drive with its easterly boundary joining lot 3. They constructed a new driveway over to lot 4, a new stairway to High Drive, and a retaining wall along the southerly edge of their properties. In fixing the amount of their damage the trial court awarded them the cost of lot 4 and of these improvements.

Plaintiffs contend that we should not consider the arguments made by defendant in its opening brief in that it failed to print any parts of the typewritten record, or to state "the substance of such record, parenthetically referring to the line and page of the typewritten transcript for verification". (Sec. 3, Rule VIII, Rules for the Supreme Court and District Courts of Appeal.) This deficiency was corrected in the reply brief and we have not been inconvenienced by it. For that reason we do not regard the omission as a serious defect.

The appeal is upon the judgment roll alone. Plaintiffs urge that in the absence of the reporter's transcript we can neither understand nor decide the questions presented here. We have found the findings of fact and conclusions of law and judgment sufficient for that purpose. That being true, it was unnecessary to bring up the reporter's transcript.

Plaintiffs urge that the provisions of section three of the Improvement Act of 1911 should be held unconstitutional as violating the provisions of section 24 of article IV of the state Constitution. The title to the act was amended in 1931. (Stats. 1931, p. 1568.) As amended it was entitled, "An act to provide . . . for establishing and changing the grades of any such public streets, avenues, lanes, alleys, courts, places, sidewalks, highways, roads, properties or rights of way; . . . " This title gives sufficient notice of the provisions of the act relating to the establishment and changing of grades to satisfy the requirements of the Constitution. (See 23 Cal. Jur. 653 et seq., and cases cited.)

At the time of the improvement of High Drive section three of the Improvement Act of 1911 provided in part as follows:

"*Grade. Objections.* The grade to which any work shall be done or improvement made shall be such as may be shown on the plans or profiles therefor or it may be done on such a

grade as may have been formally established by the city council. If any official grade has already been adopted or established for any of the streets, avenues, or other places or property, proposed to be improved, it shall be lawful for the resolution of intention to provide that said work shall be done to new grades or grades different from those so established or adopted, and shall refer to plans, profiles or specifications for the description of the grade at which the work is to be done. Any property owner whose property is to be assessed to pay the costs and expenses of the proposed improvement may at the time fixed in the resolution of intention for hearing of objections to the proposed work and improvement, appear before the city council and make objection to the proposed grade or proposed modification of grade. A failure to make objection at such time shall be deemed to be a waiver of all objections to the proposed grade or proposed change or modification of grade and shall operate as a bar to any claim for damages or any subsequent action looking to the prevention of the work or the recovery of damages on account of the performance of the work to such grade or changed grade. The provisions of this section relative to grades are alternative and shall not repeal other provisions of this act or other statutes relative to change of grade.'' (Amendment approved June 14, 1929; Stats. 1929, p. 1652.)

As we have observed, plaintiffs failed to object or protest to any of the improvement proceedings although notice was given of the grade upon which the proposed work was to be constructed. Under facts paralleling those of the instant case, numerous questions argued by counsel have been settled by the recent case of *Snoffer* v. *City of Los Angeles,* 6 Cal. App. (2d) 14 [43 Pac. (2d) 852], where it is said: ''Notice of the proposed improvement being sufficient, plaintiff's claims were barred by his failure to make objection within the time fixed in the ordinance of intention. A city in initiating a proceeding under the Improvement Act in question does so upon the condition expressly stated in the law, that any property owner who intends to claim damages on account of the improvement will make that fact known. If no objections are received the city has a right to proceed upon the assumption that no claims for damages can thereafter be made. The purpose of requiring objections before any work is actually done is to enable the city to determine what damages, if any,

will have to be paid by reason of the improvement. When objections are filed the city then has an opportunity to determine whether to proceed with the improvement or to abandon it. If property owners were allowed to wait until after the work was completed before they were required to make their claims known, a city might be faced with demands for such amounts as, had they been known before, would have justified the abandonment of the proposed improvement. The fact that no claims for damages can be made against the city other than those preserved by means of objections filed within the time fixed by the ordinance of intention is certainly one of the important things for the city council to know in determining whether or not to go on with the proposed work. While a city cannot damage property without compensation to the owner, it may limit the time within which and the place where claims against it may be presented. (*Sala* v. *City of Pasadena*, 162 Cal. 714, 718 [124 Pac. 539].) Upon both reason and authority it must be held that the claims of the plaintiff became barred by reason of his failure to object to the grade fixed, within the time specified in the ordinance of intention.'' (See, also, *Blake* v. *City of Eureka*, 201 Cal. 643 [258 Pac. 945] ; *Sala* v. *City of Pasadena,* 162 Cal. 714 [124 Pac. 539] ; *Musto-Keenan Co.* v. *City of Los Angeles,* 139 Cal. App. 506 [34 Pac. (2d) 506].)

█ Plaintiffs maintain that the provisions of the Improvement Act of 1911 must be held unconstitutional and void in so far as they purport to bar damages caused by establishing a grade or making a change of grade because the act provides for nothing more than the making of the protest without any power given to any board or city authority to hear it or fix or award damages. This may be so, but that alone does not deprive the protesting owner of the due process of law or enable the city to take his property for a public use without compensation because if the owner makes his protest he can seek his damages in a court of law.

Due process of law does not entitle a person to have a hearing before any particular board, tribunal or court. It is satisfied if he be given a fair hearing upon reasonable notice before a board, tribunal or court having jurisdiction of the proceedings and the parties. As was said in *Ex parte Wall,* 107 U. S. 265 [2 Sup. Ct. 569, 27 L. Ed. 552] : ''Assessments for damages and benefits occasioned by public improvements

are usually made by commissioners in a summary way. . . . In all cases that kind of procedure is due process of law which is suitable and proper to the nature of the case, and sanctioned by the established customs and usages of the courts. 'Perhaps no definition,' says Judge Cooley, 'is more often quoted than that given by Mr. Webster in the Dartmouth College case: ''By the law of the land is most clearly intended the general law—a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society.'' ' (Cooley, Const. Lim. 353.) The question, what constitutes due process of law within the meaning of the Constitution, was much considered in this court in the case of *Davidson* v. *New Orleans,* 96 U. S. 97 [24 L. Ed. 616] ; and Mr. Justice Miller, speaking for the court said: 'It is not possible to hold that a party has, without due process of law, been deprived of his property, when, as regards the issues affecting it, he has by the laws of the state a fair trial in a court of justice, according to the modes of proceeding applicable to such a case.' '' (See, also, *City of Seattle* v. *Kelleher,* 195 U. S. 351 [25 Sup. Ct. 44, 49 L. Ed. 232].)

The fact that private property is actually taken for a public use without compensation to the owner does not of itself establish a violation of the provisions of section 14 of article I of the state Constitution, or of the Fourteenth Amendment to our federal Constitution, the first of which prohibits the taking or damaging of private property for public use without due compensation to the owner, and the latter of which prohibits a state from denying to any person within its jurisdiction the equal protection of its laws. The owner may seek his just compensation if he follows the procedure established by law. As a first step towards obtaining this compensation in a proceeding such as we have here he must protest the establishment or change of grade. Thus he gives notice to those interested that he may be damaged and may claim compensation for such damage. This is not an unreasonable or unduly onerous burden to be placed upon him. If he fails to protest and give this notice he should be held to have waived his claim for damage and his conduct should

be considered as tantamount to his donation of his property or its damage to the public for use.

The trial court found that plaintiffs were damaged by having the grade of High Drive lowered in front of their property thereby destroying their means of ingress to and egress from their property, and determined as a matter of law that they had waived all damage to lot 3, which was within the assessment district, by not protesting the establishment of the grade. The correctness of this finding and conclusion cannot be questioned. (*Snoffer* v. *City of Los Angeles, supra.*)

The trial court further found that plaintiffs had been damaged in their ownership of lots 1 and 2 by the grade and that as those lots were neither within the assessment district nor the city limits, concluded that they had not waived their damages affecting them. This finding and conclusion furnishes the basis of the judgment.

It is apparent that if the damages suffered were solely caused by destroying the use of lot 3, and were waived by the failure to protest, the same damages cannot be attached to other property and recovered. Damages once suffered and waived must be held to be waived for all purposes and cannot be recovered under another guise, name or form.

According to the findings of fact the damage suffered by plaintiffs arose through the destruction of their means of ingress to and egress from their residence. The ways of ingress and egress were entirely on lot 3. No part was on either lots 1 or 2. These lots were not affected in any way except through the damage to lot 3. Had plaintiffs protested the grade they would have placed themselves in a position to recover their full damage caused by the destruction of their ways over lot 3 and would have had no occasion to assert any further damage by reason of their ownership of lots 1 and 2. They could not have done so because when they were compensated for the damage to their roadway and stairway on lot 3, which would have included the cost of acquiring and constructing a new roadway and stairway and protecting the face of the cut made along the front of their property, they would have been fully compensated for all damage suffered by them. These damages were all suffered by reason of the ownership of lot 3. No other or further damage was suffered by reason of the ownership of lots 1 or 2. Because of these

facts found, the trial court should not have awarded plaintiffs judgment for these identical damages after finding that they had been waived by reason of the failure to protest the grade. It follows that the judgment cannot be sustained as it is not supported by the findings of fact and conclusions of law as damages once waived must be considered waived for all purposes.

█ Counsel for plaintiffs argue at length that as lots 1 and 2 were outside the boundaries of the assessment district and the city, the plaintiffs were not required to protest the damage to those lots and cannot be held to have waived them. This argument cannot avail because all the damages suffered were caused by reason of the effect of the new grade on lot 3. Having waived those damages by failure to protest, they cannot recover them.

Judgment reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 22, 1936.