THE MUNICIPALITY OF SAN LORENZO, represented by its Mayor PEDRO BORGES ET AL., Appellants, v. THE PUERTO RICO PLANNING, URBANIZING, AND ZONING BOARD, ETC., Appellee.

No. 1   Argued February 3, 1948.—Decided April 22, 1948.

*David Curet Cuevas* for appellants. *Rafael R. Fuertes, Félix Bello* and *Sandín del Manzano* for the appellee. *Félix Sojo Granado* for the Housing Authority as *amicus curiae.*

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the Court.

On April 9, 1947, the Puerto Rico Planning, Urbanizing, and Zoning Board adopted a Resolution declaring "slum district" a parcel of land situated in the urban zone of the Municipality of San Lorenzo, which contains an area of 41,700 square feet and in which are located 33 constructions. Prior to the date of said resolution, the Board notified all the owners of the lands, houses, and other buildings within the area, and also the Mayor of San Lorenzo, of its intention to declare said area of the municipality a slum district and called them to a public hearing which was held on March 14, 1947.

Feeling aggrieved by the decision of the Board, the Mayor and three other persons took the present appeal, pursuant to the provisions of § 6 of Act No. 264 of May 14, 1945.

The appellants contend (1) that the cited Act No. 264 is unconstitutional, as it was passed by the Legislature in excess of the powers granted to it by the Organic Act; (2)

that the actions of the Board were not in accord with the constitutional guaranty of due process of law, nor with the standards established by the same Act No. 264; and (3) that the evidence received by the Board was not sufficient to support the resolution appealed from.

██ The alleged unconstitutionality of Act No. 264 of May 14, 1945 (Laws of 1945, p. 910) consists in that, in the opinion of the appellants, it deprives them of their property without due process of law and without due compensation, in contravention of the express provisions of the first and ninth paragraphs of § 2 of the Organic Act.

The appellants especially challenge § 9 of the Act, which provides:

"Hereafter it shall be illegal to erect any building or structure in a zone declared 'slum district' under this Act, and it shall likewise be illegal to sell, lease, or otherwise cede lands in said zones for purposes of constructing thereon; and it shall likewise be illegal to make repairs or improvements to houses located in a 'slum district,' without previous permission or authorization in writing of the Puerto Rico Housing Authority; *Provided, however,* That in no case may improvements be allowed which consist in extensions to any house, building, or structure located in a 'slum district,' and no registrar of property may investigate or enter any sale of conveyance of land or dwelling in a 'slum district' without the consent of the Puerto Rico Housing Authority."

The contention of the appellant is that the procedure established by the above-transcribed Section is one of condemnation, since it deprives the citizen of the right to enjoy and dispose of his property; that said procedure is unconstitutional because it omits the intervention of judicial bodies and does not guarantee a just compensation to the person whose property is condemned; and, lastly, that the Act is void for the additional reason that it confers on the Housing Authority absolute power "to determine the manner to which the owner should conform the enjoyment of his property."

The clearance of slums which are prejudicial to the safety, health, welfare, and morals of its inhabitants, is a public purpose for the execution of which the state is bound to exercise two of its most extraordinary powers—the police power and the power of eminent domain. In the exercise of the police power, and with the purpose of protecting the health and welfare of the community, the state can regulate and restrict all that which may constitute, or which if unrestricted may become, a menace to the health and safety of its citizens.

There are numerous decisions which hold that, when in a certain district of a city the sanitary conditions and the dwelling accommodations are so deficient that they are a menace to the health, safety, and morals of its inhabitants, the state may condemn the zone where such conditions exist, upon the payment of due compensation; or it may, in the exercise of its police power, order that reasonable changes be made in the buildings existing therein for the protection of the community. In the latter case, the expenses incurred by the owner of the property shall be considered as *dammum absque injuria*.[1]

In several decisions,[2] it has been held that the fact that an Act or regulation promulgated in the exercise of the police power prevents or restricts the enjoyment of certain individual rights over a property, without providing for the payment of compensation, does not necessarily render the Act or regulation unconstitutional on the ground that it violates the due process clause or condemns private property for public use without compensation. Those enactments, when they are reasonable and do not transcend the limits and purposes of the police power of the state, are not considered as taking

---

[1] *Ryan* v. *Housing Authority*, 15 A. 2d, 647; *Lott* v. *City of Orlando*, 196 So. 313; *N. Y. C. Housing Authority* v. *Muller*, 270 N. Y. 333, 105 A.L.R. 905; *Romano* v. *Housing Authority of Newark*, 10 A. 2d. 181, affirmed in 12 A. 2d. 384; *Tenement House Dept. City of N. Y.* v. *Moeschen*, 179 N.Y. 326, 72 N.E. 231.

[2] *New Orleans Public Service* v. *New Orleans*, 281 U.S. 682 74 L. ed. 1115; *Atlantic Coast Line R. Co.* v. *Goldsboro*, 232 U.S. 548, 58 L. ed. 721; *Hardin-Wyandot Lighting Co.* v. *Upper Sandusky*, 251 U.S. 173, 64 L. ed. 210.

private property for public use but as regulating the use and enjoyment of the property by its owner. If the latter suffers any prejudice, the same is *damnum absque injuria* or is considered as compensated by the share which the owner of the property will have in the benefits that the statute seeks to bestow upon the whole community.

In the case at bar, the Planning Board, acting within the powers conferred on it by said Act No. 264, confined itself to a declaration of "slum district," by following the procedure authorized by §§ 3, 4, and 5 of said Act, and it proceeded to place the zone under the supervision and inspection of the Housing Authority, as provided by § 7. There is not involved, therefore, the clearance of a slum, for the accomplishment of which the Authority would have to comply with the provisions of § 8 of the Act, by acquiring by voluntary purchase or by condemnation proceedings the land and the properties within said zone.

The objection of unconstitutionality of the Act must be dismissed.

▮▮▮▮▮ In these two assignments the appellants contend that the Planning Board "as a matter of fact, in taking the whole proceeding herein did not guarantee to the appellants a due process of law"; and that the Board erred in deviating from the procedure fixed by the Act which it should have followed in order that its declaration might be valid.

The appellants complain that the notice served on the Mayor and the owners did not comply with the provisions of Act No. 264 of 1945, and they contend that the same is fatally defective. The respondent Board on the contrary maintains that the form and contents of the notice were in accord with the provisions of § 4 of the cited Act.

Section 4 of Act No. 264 of 1945 provides that, before making the declaration of "slum district," the Board shall give notice of its intention of making such declaration to the Mayor of the municipality and to all the owners of the

lands or buildings; that said notice shall include a detailed description of the affected zone, clearly indicating the limits thereof, as well as the streets and alleys comprised in the said district; that the persons notified shall be called in the notice itself to a public hearing, which shall be held in the city hall, on a date and at an hour fixed, so that they may set forth the reasons they may deem pertinent in opposition to the declaration of the proposed "slum district." We have examined a copy of the notice served on the appellants herein and we find that the same complies with the requisites of the cited § 4.

From the stenographic record of the public hearing held on March 14, 1947, which we have before us, it appears that the Mayor of San Lorenzo and the other three appellants attended the proceedings and had an ample opportunity to cross-examine the witnesses presented by the Housing Authority of Puerto Rico in support of its petition for declaration of "slum district." The first witness introduced by the Authority was Mr. José A. Seraballs, a civil sanitary engineer, employed by the Sanitation Bureau of the Department of Health, who testified that in his official capacity and on the basis of a plan prepared by the Authority, he made an inspection of the sanitary conditions of the district in question and prepared a report dated February 26, 1947. The witness read the report, which was introduced in evidence and made a part of the record of the hearing. The report and the testimony of Mr. Seraballs show that in the parcel in question there are 43 houses, most of them in unsanitary conditions, over-crowded, and with very few facilities; that only four of said houses have sanitary installations connected with the sewerage system of the town and discharge the waste waters from the washing of clothes and dishes in the street, the land being on a higher level than Valeriano Muñoz Street; in Maracas Street, which is on a lower level, the houses discharge the waters by the rear part over land of the Housing

Authority; that a swampy area exists there, and it constitutes a source of infection and of contagious diseases; that the latrines are in very unsanitary conditions because the land, which is of solid gravel, does not filter; that the majority of the dwelling houses do not have the two meters of lateral alleys required by the Health Regulations, in order that there be sufficient sanitary ventilation; and, lastly, that the zone is in a completely unhealthful condition. At the close of the testimony of Mr. Seraballs, the Chairman placed the written report at the disposal of the appellants who were present.

The Housing Authority offered the testimony of Miss Luz María Sitiriche, social worker and district supervisor of the Bureau of Public Assistance of the Department of Health. She testified regarding the economic and social conditions of the zone, including health problems, sanitary facilities, number of houses, and families. The witness read the official report prepared by her which was introduced in evidence and made a part of the record. It appears therefrom that the 43 houses are inhabited by 57 families, or a total of 261 persons. The report was placed at the disposal of the appellants present there.

The next witness, Mr. Perfecto Montalvo, engineer of the Housing Authority, submitted a plat of the zone in controversy, prepared by him, which showed the location of the 43 houses, the distances separating the latter, and other details. The plat was admitted in evidence and placed at the disposal of the interested parties. The official report prepared by Mr. Montalvo was also admitted and read by the persons present there.

The witness Esteban Fuertes, General Supervisor of the Tenant Division of the Housing Authority, identified, as taken under his direction, a group of photographs of the zone in question, which were admitted in evidence.

At the close of the evidence of the Housing Authority, the officer who presided at the hearing invited all the interested

parties present therein to express their views and to ask any questions they might deem advisable. The record shows an extensive examination and an ample discussion in which the Mayor and the other appellants participated. The representatives of the Housing Authority stated that the latter proposed to eliminate the zone in question through the voluntary purchase or condemnation of the lands and the buildings, as soon as there were funds available therefor; and that, meanwhile, the district would continue in the same condition in which it was, even though repairs, improvements, and enlargements might be made with the Authority's permission.

The constitutional clause of due process of law does not require that a special procedure be followed or that the interested persons be publicly heard before a board or tribunal. The constitutional requisite is complied with if the person is given a fair hearing on reasonable notice before a board, tribunal, or court having jurisdiction of the proceedings and the parties. *City of Chicago* v. *Samuel J. Cohn et al.,* 55 A.L.R. 196; 42 Am. Jur., § 119, p. 455; *Heinlen* v. *Heilbron,* 94 Cal. 636, 30 P. 8; *Shearman* v. *Jorgensen,* 106 Cal. 483.

The administrative boards and tribunals are not bound to follow the same technical rules of procedure applicable to judicial tribunals. It is sufficient if a procedure is followed whereby the affected person is afforded a reasonable opportunity to be apprised of the question involved in the proceeding and to defend his rights. *Sherer* v. *City of Laguna Beach,* 57 P. 2d 157; 13 Cal. App. 2d 396 and cases cited therein.

The record in the instance case shows that the appellants were timely and reasonably notified to appear, as they did, at its public hearing held on March 14, 1947; that they were present during said hearing, heard all the witnesses testify, and read all the written reports offered in evidence; and, lastly, that they cross-examined the witnesses and submitted the arguments they chose, in opposition to the zone in question being declared a "slum district."

The procedure followed by the respondent Board was in accord with the statute and the constitutional precepts.

In the fourth assignment it is alleged that the respondent Board erred "in making a declaration of slum district which is not supported by the evidence submitted to the Board." The evidence introduced by the Housing Authority and admitted and accorded credit by the Planning Board is, in our judgment, sufficient to justify the declaration of slum district. It is true that some of the owners of houses located in the district objected to the declaration, and alleged that their houses have sanitary installations, ventilation, and are connected with the sewer system. However, those few individual statements are not by themselves sufficient to destroy the impression produced by the examination of the stenographic record and of the reports of the health inspectors and of the social workers, to the effect that the prevailing conditions in the district in question are undesirable and should be corrected in accordance with the provisions of the laws in force. We must presume that the respondent Board, as well as the Housing Authority has no other interest than to improve the living conditions of the inhabitants of the district which has been declared "slum district"; and, since the evidence is sufficient to support the findings made, the latter should be respected by this Court.

The decision appealed from will be affirmed.