[Civ. No. 6450.   Fourth Dist.   July 20, 1961.]

EMILIO GIANNI et al., Respondents, v. THE CITY OF SAN DIEGO, Appellant.

J. F. DuPaul, City Attorney, and Robert S. Teaze, Deputy City Attorney, for Appellant.

Pentoney & Sjogren and Robert T. Sjogren for Respondents.

SHEPARD, Acting P. J.—This is an appeal by defendant city of San Diego from a judgment against it in favor of plaintiffs on account of damages alleged to have resulted from a change in the officially established grade of a public street, to a new and different grade in front of plaintiffs' residence property, in constructing a street improvement.

### FACTS

In general substance, the facts shown by the record before us are as follows: Plaintiffs are the owners of a residence lot with a frontage of 100 feet on 50th Street in the city of San Diego. The property has no vehicular access to any other street, and is improved with a residence and private garage.

The garage is constructed immediately adjacent to the line dividing the official street right-of-way from plaintiffs' property. The buildings were constructed about 1952, and plaintiffs acquired the property about 1954. Plaintiffs, in their complaint, alleged, and the court found it to be true, "That the official grade on said 50th Street between University Avenue and Wightman Street was established by the Council of the City of San Diego, By City Ordinance No. 12025 adopted in 1928. That said City Ordinance has never been repealed, and that at all times mentioned herein, was in full force and effect."

In 1958 a street improvement proceeding was commenced for the improvement of the street in front of said property, and of other nearby connecting streets. The petition for the commencement of said proceeding was signed by plaintiffs and others. Defendant's governing board, on April 1, 1958, adopted its resolution of intention to make the improvement petitioned for. Notice of the adoption of such resolution was duly published in the local newspaper, posted in the area of improvement, and mailed to all affected property owners, including plaintiffs herein.

Excepting only the question of whether or not the resolution sufficiently stated that there would be a change from the officially established grade of 1928 to a new grade, there is no dispute respecting the validity of the proceeding. It is likewise conceded that plaintiffs were actually aware, at all times material hereto, of the fact of a proposed improvement of the street concerned, within sufficient time to have made a protest to defendant's governing board within the time provided by law. Neither is there any dispute about the formalities of publication, posting and mailing having been properly complied with, except in the respect of the change of grade hereinabove first noted. It is likewise conceded that plaintiffs made no protest within the time provided by law.

The resolution of intention and the notice given pursuant thereto provided, as respects the matter here subject of controversy, as follows:

"That the said work hereinbefore described shall be done to the official grades shown and indicated upon the plans and profiles on file in the office of the City Clerk of said City, and hereinafter referred to; and reference is hereby made to said plans and profiles for the description of the grades at which the work is to be done.

"All of the said work hereinbefore generally described shall be constructed in the manner, at the locations, within the limits, of the materials, and of the dimensions and to the official grade as shown upon and in accordance with the plans, profiles, drawings, typical cross-sections and specifications therefor contained in Document Nos. 493342, 535153, 546154 through 546159, and 566641, on file in the office of the City Clerk of said City, and copies of which are on file in the office of the City Engineer of said City, and by this reference thereto all said plans, profiles, drawings, typical cross-sections and specifications are made a part hereof. . . ."

The grade of the street was constructed in accordance with the plans and specifications adopted by defendant's governing board, to which reference was made in the resolution and notice, but did not conform to the official grade established by ordinance in 1928, which official grade was still in effect at the time of the improvement proceeding of 1958 here under examination. The grade adopted by the proceeding of 1958 and actually constructed was 2 feet higher at one edge of plaintiffs' lot and 6 feet higher at the opposite edge of plaintiffs' lot than the official grade already established as of 1928. Stated in another way, the grade as actually constructed had a shallower cut by 2 feet on one edge of plaintiffs' lot and 6 feet on the other edge of plaintiffs' lot than had been provided by the existing official grade as established in 1928.

Plaintiffs alleged, and defendant denied, "That the official grade as established on 50th Street in 1928, was such that access to said 50th Street from said property was easily and readily accomplished by motor vehicle or on foot." The evidence was contrary to this allegation, and the trial court found such allegation to be untrue and defendant's denial thereof to be true.

The cut or excavation, caused by the work actually done, established the street surface level 7.1 feet lower than the level of the ground immediately adjacent to the front of plaintiffs' garage, and about 5 feet lower than the existing edge of plaintiffs' property line at the other end of said lot. There is some indication that the floor of plaintiffs' garage was already slightly higher than the natural level of the grade of the street as it stood before the improvement proceeding was commenced, but such difference did not materially impede ingress and egress to the garage and is unimportant to the discussion which follows. The testimony as to how plaintiffs

were damaged was based entirely on the depth of the cut; that is, that the depth of the cut below the natural ground level interfered with access to the property to such an extent as to cause the damage complained of.

Plaintiffs' complaint, as their allegation of the cause of damage, reads as follows: "That as a direct and proximate result of the aforesaid acts of the defendants and each of them, plaintiffs' property no longer has access to 50th Street and vehicles will no longer be able to have ingress to and agress from plaintiffs' property, and the said garage from 50th Street."

Thus, the sole basis of damage alleged by plaintiffs' complaint, and as found by the trial court to be true, is that the lowering of the grade from the natural level interfered with access to plaintiffs' property. A second ground of complaint by plaintiffs which related to loss of lateral support was factually rejected by the trial court for lack of supporting evidence.

The trial court concluded that the resolution of intention was insufficient to give notice to plaintiffs that a change of grade from the official grade established in 1928 was contemplated, and that therefore plaintiffs did not waive their right to sue for damage by having failed to file timely protest with defendant's governing board. Judgment was rendered for plaintiffs for damages in the amount of $3,885.56. Defendant appeals therefrom.

## The Problem

The real question, simply stated, is, was the Resolution of Intention, and Notice pursuant thereto, deficient in any respects material to the damage which plaintiffs claim. In other words, can it be said, as a matter of law or fact, that the lack in Notice of any words stating that a new grade would be established legally deceived plaintiffs into believing that the grade as actually constructed would be shallower or less damaging than the information legally conveyed by the resolution and notice as drawn and given.

## Easement of Access Is Property

Preliminarily, it will be remembered that the right of a property owner to recover damages where property has been taken for public use without due process of law and without just compensation, has been established by a long line of judicial decisions, and that the right of access to a person's

property, i.e., the easement of ingress and egress, is properly protected by this rule. (*Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614, 617 [37 P. 750, 42 Am.St.Rep. 149]; *Bacich* v. *Board of Control,* 23 Cal.2d 343, 349 [8] [144 P.2d 818]; *People* v. *Russell,* 48 Cal.2d 189, 195 [2-3] [309 P.2d 10].) The damage complained of in such cases results from interference with access by the actual change of grade, not by the ordinance fixing the official grade. (*Eachus* v. *Los Angeles etc. Ry. Co., supra,* 621; *Heimann* v. *City of Los Angeles,* 30 Cal.2d 746, 754 [5] [185 P.2d 597].)

### DUE PROCESS BY STATUTORY NOTICE

■ That the provisions of the Improvement Act of 1911 (now incorporated in Sts. & Hy. Code, §§ 5000-6750) and similar statutes, provide generally the due process of law required by our Constitution is likewise well settled, and the failure of the property owner to protest within the prescribed time is recognized as a waiver of any claim of damage he may have on account of the noticed improvement. (*Sherer* v. *City of Laguna Beach,* 13 Cal.App.2d 396, 400-403 [3-4] [57 P.2d 157]; *Ambassador Holding Corp.* v. *City of Los Angeles,* 7 Cal.2d 104, 106 [1] [59 P.2d 1001]; *Sala* v. *City of Pasadena,* 162 Cal. 714, 718 [124 P. 539]; *Veterans' Welfare Board* v. *City of Oakland,* 74 Cal.App.2d 818, 826 [5] [169 P.2d 1000]; *Chesney* v. *Byram,* 15 Cal.2d 460, 469 [101 P.2d 1106].)

### NOTICE FORM AND KNOWLEDGE CONVEYED

■ A notice that the work will be done in accordance with, and to the grade shown on the plans and profiles on file in the office of the city engineer, and referring interested property owners thereto for further information, in effect informs the property owners that the grade to be used is the "official grade" if any such "official grade" has theretofore been lawfully adopted by the city. (*Musto-Keenan Co.* v. *City of Los Angeles,* 139 Cal.App. 506, 513 [2] [34 P.2d 506]; *Cottle* v. *City of Los Angeles,* 5 Cal.2d 140, 144 [1] [53 P.2d 361].) However, in *Snoffer* v. *City of Los Angeles,* 6 Cal.App. 2d 14, 19 [43 P.2d 852], where LaBrea Avenue, having *no* "official grade" was ordered improved and the language of the resolution and notice was similar to the language in the case here at bar, the court held the notice sufficient, and said: "The ordinance of intention gave as much information as the statute required, and was certainly sufficient to charge the property owner with notice of the proposed improvement."

Thus, where *no* "official grade" has ever been established, this same type of wording in the notice gives notice to the property owner that some sort of new grade is about to be established that is different from the natural grade, and he is required, if he wishes exact information, to go to the city engineer's office and examine the plans and profiles there on file. Both sides of the picture were elucidated in *Cottle* v. *City of Los Angeles, supra,* at page 144 [1], where the court said:

"The improvement act . . . contemplates that when there is to be a change of grade the ordinance of intention shall refer to a new grade in order to give notice to the property owners and put them to the necessity of protesting in order to protect their action for damages if any is to accrue from the performance of the work. Such has been held with respect to section 4 of the Boundary Line Act of 1911 [citation], the language of which is very similar to that of the section here involved. [Citing Musto-Keenan case.] Where however, there is no established grade and the ordinance of intention gives notice that grading will be done, referring the reader to the plans and profiles for more accurate information, the requirements of the section are met. [Citing Snoffer case.] The property owner in such event is put to the necessity of filing his protest."

Counsel for respondents concede that if, in fact, an official grade had not already been established for 50th Street in the case here at bar, the rule anounced in the Snoffer case would be applicable. With this we agree. The question then, of whether or not plaintiffs' right of action was lost by failure to make timely protest, first narrows down to just what information the notice here under scrutiny really gave to plaintiffs. As has already been noted, such resolution and notice, as a matter of law, told plaintiffs that the work to be done would be according to the official grade. The official grade actually was 2 to 6 feet lower than the grade proposed and used in the improvement here under scrutiny. Thus, under the uncontradicted evidence, plaintiffs were, by the notice given, legally placed in possession of information that the grade to be used and the cut to be made was deeper by 2 to 6 feet than the grade actually used in the improvement as constructed. There is not one iota of evidence upon which to rest any conclusion that the change from the "official grade" was in any way harmful to plaintiffs. Neither is there any evidence that the failure of the resolution and notice

to speak of a change to a new grade in any way misled or deceived plaintiffs to their damage.

### NOTICE PURPOSE AND EFFECT

Notices, like that herein involved, are not designed nor purposed as mere scraps of paper nor empty formalities. (*McIvor* v. *Mercer-Fraser Co.*, 76 Cal.App.2d 247, 252 [5] [172 P.2d 758]; *Federal Constr. Co.* v. *Wold*, 30 Cal.App. 360, 362 [158 P. 340]; *Yreka City* v. *Warrens*, 10 Cal.2d 776, 780 [2] [76 P.2d 688].) They serve and must serve a definitely useful function, i.e., to inform the property owner that a project for the improvement of the street is planned, the general nature of the project and, where an "official grade" has already been established, that a "new grade" is to be used. In a case like the one here at bar, the property owners are already legally aware of the existence of an official grade. (*Dolch* v. *Ramsey*, 57 Cal.App.2d 99, 105 [2] [134 P.2d 19]; *Crabbe* v. *White*, 113 Cal.App.2d 356, 359 [2] [248 P.2d 193].) The only possible purpose of the insertion of the terminology "new grade to be established" or "new grade to be used" is to give the property owners the additional information that such new grade might be more detrimental to their property than the official grade. As above noted, plaintiffs already have legal information of the existence of the official grade. If they file no protest, this simply means that they are satisfied not to claim any damage if the cut is made to the official grade. Unless the evidence shows that in some way the grade actually used was more detrimental to them than the official grade, it assuredly cannot be said that their lack of knowledge of the change of grade in any way detrimentally affected them.

In the case here at bar, as above noted, plaintiffs did not even offer any evidence that the change from the "official grade" to the grade actually used in any way detrimentally affected them. The construction of the grade, as above noticed, was shallower in depth by 2 to 6 feet than the official grade. For a notice to be factually deficient, such deficiency should in some way detrimentally affect the knowledge which the property owners were entitled by law to have. A property owner in an inverse condemnation action, in order to recover a judgment for damages, must not only show that there was actual injury to the property involved, but also legal damage. (*Sherer* v. *City of Laguna Beach, supra,* p. 404 [7].)

LIBERAL CONSTRUCTION

In the particular type of matter here under consideration, the "liberal construction" directed by statute and so commonly spoken of respecting notices of various types simply means that those deviations which are not and cannot be shown to be potentially, possibly or actually harmful to any interested party will be ignored. This is the real import of the numerous expressions of various courts on this type of matter and is inherent in the reasoning in every case which discusses the point. The decision of each such problem always turns on the answer to the question: "Was the alleged defect in any way potentially, possibly or actually misleading so as to cause possible damage to the complaining party?" Examples making clear that this is the basic thought in deciding whether or not the notice should be held sufficient or insufficient are to be observed in the following cases: *St. John* v. *King*, 130 Cal.App. 356, 365 [20 P.2d 123], where the court said: ". . . we are unable to perceive how that circumstance could in any degree substantially affect any of the rights of owners of property within the assessment district, or deprive them of any of the 'due process of law' requirements assured them by virtue of the statute in question"; *Schwiesau* v. *Mahon*, 128 Cal. 114, 116 [60 P. 683]: "It is by this action that the board is to be guided and the property owner is to judge whether he will protest against or acquiesce in the proposed improvement"; *McIvor* v. *Mercer-Fraser Co., supra*, p. 253 [5]: ". . . where the excavation is *actually deeper* or is conducted in a different and more dangerous manner than stated in the notice, the notice is insufficient" (emphasis added); *Fay* v. *Reed*, 128 Cal. 357, 360 [60 P. 927]: "The resolution . . . is for the purpose of enabling the owners of property, which would be liable for the cost of the improvement, to determine whether they will file written objections and so postpone the work"; *Shepherd* v. *Chapin*, 45 Cal.App. 645, 648 [188 P. 571]: "Under all the circumstances it is incredible that there could exist any misunderstanding as to which plans and specifications furnished the description of the work to be done. . . . This allegation [variable cost of iron or steel] is a mere opinion. It does not show what the difference in cost is, or how it may injuriously affect the property owner"; *Mill Valley* v. *Massachusetts Bonding etc. Co.*, 68 Cal.App. 372, 381 [229 P. 891]: "There is no evidence that the difference in these requirements would vary materially

the cost. The objection is without merit"; *Bou v. Willits,* 61 Cal.App. 32, 37 [214 P. 519] : ". . . but minor defects such as are here involved in such notice ought not to be allowed to constitute a failure of publication where such notice is manifestly sufficient to call the attention of the property owner to what is proposed to be done and does not have the effect of misleading him."

### No Waiver Where Notice Detrimentally Defective

We do not suggest that if the alleged deficiency in the notice had been such as to mislead plaintiffs to their damage their right of action would not have been preserved. In other words, if it could have been shown that the grade actually used, whether shallower or deeper, was more detrimental to plaintiffs than the grade of which they were given notice, then the rule of the *Musto-Keenan* case might well apply. Of interest in this respect, see also *McIvor v. Mercer-Fraser Co., supra; Newman v. Pasternack,* 103 N.J. 434 [135 A. 877, p. 878 [1], 50 A.L.R. 482].)

### Failure of Timely Protest Waives Damages

We do hold that under the peculiar facts of the case here at bar, where the actual grade used was, under the uncontradicted evidence, less damaging to plaintiffs than the grade of which notice was given, the notice was amply sufficient to and did place plaintiffs on inquiry as required by statute. Thus, failure of plaintiffs to protest within the time provided by law must be considered a waiver of damages.

The judgment is reversed.

Coughlin, J., concurred.