[No. B237984. Second Dist., Div. One. Mar. 7, 2013.]

NANCY HOFFMEIER ZAMORA, as Trustee in Bankruptcy, etc., Plaintiff and Appellant, v.
STEPHEN C. LEHMAN et al., Defendants and Respondents.

COUNSEL

Lathrop & Gage, John Shaeffer, Randy Merritt and Emily Birdwhistell for Plaintiff and Appellant.

Irell & Manella, David A. Schwarz, Mark Paluch; Munger, Tolles & Olson, Robert L. Dell Angelo, Benjamin J. Maro and Jeremy A. Lawrence for Defendants and Respondents.

OPINION

MALLANO, P. J.—Three executives signed employment agreements with their corporate employer. Each agreement contained a provision stating that if

either party—the executive or the corporation—had "[a]ny claim" against the other, the claiming party had to present the claim in writing to the other party within one year of the date the claiming party knew or should have known about the facts giving rise to the claim. Otherwise, the claim was forever barred. Subsequently, the employer filed for bankruptcy.

Plaintiff, the trustee in bankruptcy, filed this action against the three executives, alleging a breach of fiduciary duty. After litigating the breach of fiduciary duty claim in court but before trial, all three executives moved to compel arbitration of the claim pursuant to an arbitration clause in their employment agreements. The trial court granted the motions to compel. On appeal, we reversed as to two of the executives on the ground they had waived the right to arbitration; we concluded the third executive had not waived the right to arbitration, but the trustee declined to arbitrate the claims against him, and he was therefore dismissed from the suit (*Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 8–9, 17–20, 22 [111 Cal.Rptr.3d 335]). Litigation proceeded in the trial court as to the other two executives.

The trial court granted summary judgment in favor of the two executives on the ground that neither the corporation nor the trustee in bankruptcy had satisfied the contractual one-year notice provision. We agree with the trial court and affirm.

# I

## BACKGROUND

The allegations and facts in this case are taken from the complaint and the papers submitted on the motion for summary judgment as well as our two prior opinions in this case. We accept as true the following facts and reasonable inferences supported by plaintiff's evidence and by defendants' undisputed evidence. (See *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 178–179 [70 Cal.Rptr.2d 96].)

### A. *Complaint*

"The original complaint was filed on December 19, 2005 [by the trustee in bankruptcy, Nancy Zamora]. A first amended complaint (complaint) was filed on May 4, 2006. It alleged as follows.

"e4L, Inc. (e4L), was a direct marketing company that promoted a wide variety of products via television, radio, and the Internet. Each week, e4L broadcast more than 3,000 half-hour television programs, commonly known as infomercials, around the world. The infomercials reached 100 percent of

the 'television homes' in the United States and 370 million 'television households' in more than 70 countries worldwide.

"Stephen C. Lehman was the chairman and chief executive officer of e4L. Eric R. Weiss was the vice-chairman and chief operating officer. Daniel M. Yukelson was the chief financial officer. All three were [executives and] directors." (*Zamora v. Lehman, supra*, 186 Cal.App.4th at p. 6.)

"The [executives] controlled and dominated e4L for their own personal benefit by issuing misleading press releases announcing that e4L (1) had raised $22 million 'when the money was in fact required to repay investments' and (2) had retained Donaldson, Lufkin & Jenerette as financial consultants. The [executives] also caused or allowed e4L to engage in improper billing procedures. They did not disclose any of these acts.

"The [executives] caused one of e4L's subsidiaries[, Quantum North America (QNA),] to enter into a loan and security agreement [with Foothill Capital Corporation (Foothill)] under which [QNA] obtained a $20 million 'credit facility' in exchange for a promise to maintain a minimum net worth of $11.7 million. The [executives] caused or permitted [QNA's] net worth to fall below $11.7 million. As a result, [QNA] defaulted under the agreement [with Foothill].

"e4L acquired a 50 percent interest in BuyItNow.com (BuyItNow), a leading Internet retailer featuring a large selection of brand name products and specialty items. The [executives] transferred more than $6.5 million from BuyItNow to e4L 'with no invoices [or] management committee consent,' commingled the two companies' funds, failed to hold proper board meetings, '[f]ail[ed] to obtain unanimous board consent on several corporate transactions including stock issuances,' advertised products for BuyItNow 'as seen on TV' when e4L could not fulfill the orders in a timely manner, caused e4L to show a $1.1 million accounts receivable from BuyItNow without providing any accounting or billing information to BuyItNow, and improperly billed BuyItNow 'to manipulate e4L's EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization).' These actions diminished e4L's investment in BuyItNow, exposed e4L to substantial liability, and harmed its reputation and creditworthiness.

"The [executives] caused or permitted e4L and its subsidiaries to inflate e4L's earnings and net worth artificially by charging customers' credit cards multiple times for a single purchase and by charging customers' credit cards for merchandise e4L did not have in stock. In so doing, the [executives] violated the 'chargeback' limits of the credit card company.

"e4L attempted to sell its Asian subsidiaries but that effort failed when the [executives] allowed the subsidiaries to fall significantly off their operating budgets.

"Eventually, e4L lost its ability to fill and ship orders. The [executives] caused or permitted e4L to sell and transfer its computers to employees for nominal sums.

"On or about March 5, 2001, e4L filed for chapter 11 protection under the Bankruptcy Code (11 U.S.C. [§§ 1101–1174]). The chapter 11 proceeding was [later] converted to a chapter 7 case (11 U.S.C. [§§ 701–784]).

"The [executives] concealed their wrongful acts and omissions. *e4L did not discover the acts and omissions until November 22, 2002.*

"[As stated, on] December 19, 2005, the chapter 7 trustee, Nancy Hoffmeier Zamora . . . , filed [this] action . . . , alleging the foregoing facts and a cause of action for breach of fiduciary duty against the [three executives]." (*Lehman v. Superior Court* (2006) 145 Cal.App.4th 109, 113–114 [51 Cal.Rptr.3d 411], italics added.)

## B. *Motion to Compel Arbitration*

"On November 30, 2007, Yukelson filed a motion to compel arbitration and stay the action pending the outcome of arbitration. In a supporting declaration, he stated: 'Because more than five years had passed between the time I left e4L and the time I received notice of this lawsuit, I did not remember any of the terms of my employment agreement.' Similarly, Yukelson's attorney did not know that Yukelson had a written employment agreement until November 27, 2007. In the motion, Yukelson argued e4L, while still in business, had been engaged in interstate commerce, and thus the [Federal Arbitration Act (FAA) (9 U.S.C. §§ 1–16)] applied. Yukelson asserted that, under the FAA, he had not waived the right to arbitrate because he 'had no knowledge of his contractual right to compel arbitration at the time [the] litigation began and only discovered that right [three days ago].'

"On December 4, 2007, Lehman and Weiss jointly filed a motion to compel arbitration based on the arbitration provision in their respective employment agreements. That provision was identical to the one in Yukelson's agreement. Lehman and Weiss stated in declarations that they 'had forgotten about the arbitration provision in [their] employment agreement[s]' until the week before the motion was filed. They, too, argued the FAA applied and, under the FAA, they had not waived the right to arbitrate because they did not know about the arbitration provision during the litigation.

"Zamora filed opposition papers contending the [California Arbitration Act (CAA) (Code Civ. Proc., §§ 1280–1294.2)], not the FAA, governed the case and, under the CAA, defendants had waived the right to arbitrate by delay in bringing their motions and by engaging in discovery not available under the arbitration provision. Zamora asserted that the discovery conducted by defendants had prejudiced her ability to pursue the case in arbitration.

"The motions to compel were heard on February 14, 2008[, and were granted by Judge William F. Highberger]." (*Zamora v. Lehman, supra,* 186 Cal.App.4th at pp. 9–10.) On appeal, we concluded that Stephen C. Lehman and Weiss had waived their right to arbitration by engaging in discovery, and we reversed the trial court's order as to them. We concluded that Yukelson had not waived his right to arbitration because he had attempted to settle the case and had not engaged in discovery to the same extent as the other two executives. Nancy Hoffmeier Zamora declined to proceed with arbitration as to Yukelson, resulting in his dismissal from the action. (*Id.* at pp. 19–22.)

## C.   *Motion for Summary Judgment*

On August 19, 2011, Lehman and Weiss (defendants) filed a motion for summary judgment, contending that the breach of fiduciary duty claim was time-barred by (1) a one-year notice provision in their employment agreements, (2) the three-year Delaware statute of limitations (Del. Code Ann. tit. 10, § 8106(a)), and (3) California's catchall four-year statute of limitations (Code Civ. Proc., § 343). The one-year notice provision was part of the arbitration section of the employment agreements and read:

"8.01 The parties agree that any disputes, controversies or claims which arise out of or relate to this Agreement, the Executive's employment or the termination of his employment, including, but not limited to, any claim relating to the purported validity, interpretation, enforceability or breach of this Agreement, and/or any other claim or controversy arising out of the relationship between the Executive and the Company or the continuation or termination of that relationship, including, but not limited to, claims that a termination was For Cause, or for claims for breach of covenant, breach of an implied covenant of good faith and fair dealing, wrongful termination, breach of contract, or other tort or property claims of any kind, which are not settled by agreement between the parties, shall be settled by arbitration under the labor arbitration rules of the American Arbitration Association before a board of three arbitrators, as selected thereunder. [¶] . . . [¶]

"8.04 Any claim which either party has against the other party which could be submitted for resolution pursuant to this Section 8 *must be presented in writing by the claiming party to the other within one year of the date the*

*claiming party knew or should have known of the facts giving rise to the claim,* except that claims arising out of or related to the termination of the Executive's employment must be presented by him within one year after the Date of Termination. Unless the party against whom any claim is asserted waives the time limits set forth above, any claim not brought within the time periods specified shall be *waived and forever barred. . . .*" (Italics added.)

In moving for summary judgment, defendants both stated: "I never received notice from e4L or the bankruptcy trustee of a potential breach of fiduciary duty claim against me until this action was filed." They argued that a breach of fiduciary duty claim fell within paragraph 8.01, which encompassed "any disputes, controversies or claims which arise out of or relate to this Agreement[ or] the Executive's employment . . . including, but not limited to, . . . tort or property claims of any kind." Consequently, the one-year notice provision applied.

In opposing summary judgment, Zamora relied on documents that, according to her, constituted timely notice to defendants that e4L had a breach of fiduciary duty claim against them.

On November 21, 2011, the trial court, Judge Mary H. Strobel presiding, heard the motion. The same day, she signed a nine-page, single-spaced order granting the motion and explaining the basis for her decision.

The order stated: "The . . . inquiry . . . is whether [Zamora] presented Defendants with a written claim within one year of knowing the facts of the claim. Both Defendants declare that they were not provided with such notice. Thus, Defendants have met their burden of showing that [Zamora]'s claim is 'waived and forever barred' under the language of the employment agreements for failure to give written notice of claims. The burden therefore shifts to [Zamora] to raise a triable issue of fact.

"[Zamora] argues that notice was in fact given, citing to several letters regarding Directors and Officer's Insurance. The first of these is an October 24, 2000 letter from e4L's general counsel William Matthews addressed to Yukelson (and copied to Lehman and Weiss) attaching a draft letter to be sent to e4L's insurance carriers. . . . Mr. Matthews explains that the draft letter 'provid[es] notice of certain potential claims that may be made against the policies referenced in the letter.' The attached draft letter is addressed to various insurance companies with whom e4L has Directors and Officers Insurance Policies, and has the stated purpose of advising the insurers 'of the following events and/or circumstances which may result in a claim being made for insurance coverage pursuant to one or more of the Policies.' In short, this is a letter from e4L's counsel telling Defendants to notify e4L's

insurance carrier (via the draft letter) of potential claims against the company or its officers and directors. *This is not a written claim from . . . e4L to Defendants notifying Defendants that e4L has a claim against them.*

"[Zamora] also argues that mention of shareholder claims in this letter should be sufficient to constitute notice. The letter mentions claims that Foothill may have against 'e4L and/or QNA's management and Board of Directors,' but *Foothill is neither e4L nor one of its shareholders.* The letter also mentions complaints received from shareholders of BuyItNow, Inc. which raise allegations of corporate mismanagement and unfairness to minority shareholders. However, *these shareholder complaints are from shareholders of BuyItNow, Inc., not e4L, Inc.* In any event, *this letter does not constitute written notice to Defendants of e4L's claims against them* as required under the employment agreements.

"[Zamora] also presents [e-mails *sent to Yukelson* and messages posted on a Yahoo message board] as evidence that notice was given. [The e-mails were sent to Yukelson by shareholders, and then faxed] by Yukelson to e4L's attorneys . . . . The Court has overruled in part, and sustained in part, Defendants' objection to this exhibit[, rendering admissible the e-mails to Yukelson but not the messages posted on the Yahoo message board]. As regards the first five pages of [the fax], *these [e-mails] are not notice from the company to [Lehman and Weiss] regarding a claim under Section 8.04.*

"[Zamora] next cites to a draft letter dated October 31, 2000 from Lehman and addressed to David Salzman, a member of the Board of Directors, which appears to have been faxed to Mr. Salzman on November 3, 2000. [Zamora] cites to page 8 of the letter in which Lehman explains that claims were made on the D&O policy. The letter states:

" 'The D&O policy is on a "claims made" basis. Accordingly, the policy must be in effect at the time a claim is made in spite of when the act may have occurred, or there is a risk of not being covered. In order to address this issue, the Company has to put its D&O carrier on notice of possible claims involving shareholders of BuyItNow, issues that [Foothill] may have, and claims involving shareholders of the Company. The notification was broad in order to attempt to "lock-in" the possible claims should they be brought against the Company, its directors and/or officers at a later date. In the event of a claim, the policy has a $250,000 deductible. However, in the event that the Company is unable to indemnify officers and directors (e.g., Company is insolvent or under bankruptcy proceedings), there is no deductible. There is presently $25.0 million of coverage.'

"In sum, Lehman is notifying Salzman, a board member, of the fact that e4L's insurers have been notified of potential shareholder claims against

BuyItNow, claims by [Foothill], and unspecified 'claims involving shareholders of the Company.' Again, *this is not a letter from e4L notifying Defendants that e4L has claims against them.* The Court does not find that this letter creates a triable issue of fact as to whether notice of e4L's claims was given to Defendants as required under section 8.04 of their respective employment agreements.

"At the first hearing on this motion on November 2, 2011, [Zamora] argued that because the Defendants were the officers of the company, there was no other person within the company to give notice to Defendants of the company's claim against them. The evidence submitted (and discussed above) shows that there were other members of the board who could have provided such notice. Mr. Crawford declares that there were a total of seven members of the board—five excluding Defendants. Mr. Crawford and Mr. Salzman, two members of the board, both state that they did not feel that e4L's board of directors was dominated or controlled by management. Mr. Crawford and Mr. Salzman also state that from their observations, Mr. Buchalter was 'a knowledgeable and independent director who performed his duties competently.' Thus, the evidence indicates that there were members of the Board of Directors other than Defendants who could have given notice of claims by e4L against Defendants, as long as they had knowledge of the claim. As noted above, no such notice was given.

"Assuming that e4L's Board of Directors' failure to give notice to Defendants of its claims within one year is for some reason excusable, [Zamora,] as bankruptcy trustee of e4L, could have given notice of e4L's claims and failed to do so. The [complaint] acknowledges that [Zamora] was aware of the facts underlying the breach of fiduciary claim 'on or about November 22, 2002.' Thus, the one-year period under section 8.04 expired at the latest by November 22, 2003. After that date, the breach of fiduciary duty claim against Defendants was 'waived and forever barred.' Because [Zamora] . . . did not provide notice of her claim before [November 22,] 2003, [her] claim is barred by the express language of the employment agreements." (Italics added.)[1]

The trial court concluded, in the alternative, that the action was barred by California's catchall four-year statute of limitations (Code Civ. Proc., § 343). (See *Lehman v. Superior Court, supra,* 145 Cal.App.4th at pp. 114–115, 122–123.) The court did not reach the question of whether the three-year Delaware statute of limitations applied. Nor did it decide whether the

---

[1] In quoting from the trial court's order, we have omitted the court's citations to the parties' exhibits, undisputed issues of material fact, and other references to the evidence. For ease of reading, we have not identified the omissions with ellipses.

one-year *notice* provision in defendants' employment agreements required that a claim *be filed* with the American Arbitration Association during the same one-year period.

On December 1, 2011, the trial court entered judgment in favor of defendants. Zamora appealed.

# II

# DISCUSSION

A motion for summary judgment must be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

" 'A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established [or that there is a complete defense to that cause of action]. . . . Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. . . . In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. . . . We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. . . . [T]he moving party's affidavits are strictly construed while those of the opposing party are liberally construed.' . . . We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence. . . . In other words, the facts [supported by] the evidence of the party opposing summary judgment and the reasonable inferences therefrom must be accepted as true." (*Jackson v. County of Los Angeles, supra*, 60 Cal.App.4th at pp. 178–179, citations omitted.)

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

On appeal, Zamora argues that the one-year notice provision is unreasonable and therefore invalid. As she sees it, e4L and defendants could not adopt a one-year notice provision that has the same effect as shortening California's

four-year statute of limitations (Code Civ. Proc., § 343). Zamora also contends that disputed issues of fact exist as to whether, in accordance with defendants' employments agreements, e4L provided defendants with timely notice that it had a breach of fiduciary duty claim against them.

We conclude that e4L and defendants could lawfully require one year's notice of a claim by one party against the other and that neither e4L or Zamora, as the trustee in bankruptcy, gave such notice to defendants. We reach this conclusion regardless of whether the contractual notice provision is subject to strict construction against defendants (see *Lewis v. Hopper* (1956) 140 Cal.App.2d 365, 367 [295 P.2d 93]) or, as more recently suggested, is not subject to strict construction (see *Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1029–1030 [124 Cal.Rptr.3d 105]).

## A. The One-year Notice Provision

Because the one-year notice provision has the same effect as a statute of limitations, the parties analyze its validity by relying on cases addressing whether the statute of limitations may be lawfully shortened by contract.

### 1. Waiver of the Notice Provision

Zamora seems to argue that because defendants waived their right to arbitration under the employment agreements, they also waived their right to invoke the one-year notice provision. That argument is without merit. In *Zamora v. Lehman, supra*, 186 Cal.App.4th 1, we held that defendants had waived their right to arbitration because they unnecessarily delayed in seeking arbitration, and, in the meantime, they had engaged in discovery in the civil action that was unavailable in an arbitral forum. (See *id.* at pp. 8–9, 12–19.) We did not suggest that the one-year notice provision was unenforceable. Indeed, we did not discuss it at all.

As defendants assert, the employment agreements, which contained the notice provision, were properly approved: The agreements were negotiated between defendants, on the one hand, and e4L's compensation committee, on the other hand, and were then approved by the board of directors. Thereafter, one of e4L's independent directors instructed Lehman to execute Weiss's agreement on behalf of the company, and Weiss to do the same for Lehman.

### 2. Validity of the Notice Provision

With respect to the validity of a contractual limitations period, we have previously explained: "In general, California courts have permitted

contracting parties to modify the length of the otherwise applicable California statute of limitations, whether the contract has extended or shortened the limitations period. . . .

"As to extending the limitations period, an early Supreme Court case upheld an agreement to permanently waive the statute of limitations as a defense. (*Dexter* v. *Pierson* (1931) 214 Cal. 247, 250–251 [4 P.2d 932].) However, in 1951, the Legislature enacted section 360.5 of the Code of Civil Procedure. That statute permits waivers of the statute of limitations defense provided they are in writing and do not extend the limitations period for more than four years at a time; it allows for any number of successive, separately executed agreements for additional four-year periods. In contrast, the Legislature has provided in the California Uniform Commercial Code that the four-year limitations period for breach of a sales contract cannot be extended by agreement of the parties. (Cal. U. Com. Code, § 2725, subd. (1).) Nonetheless, once sued, if a defendant does not timely raise a limitations defense, it is waived regardless of how long the plaintiff has delayed. . . .

"As for shortening the limitations period, the courts will enforce the parties' agreement provided it is reasonable. . . . For instance, the parties can shorten California's four-year statute of limitations for breach of a written contract (Code Civ. Proc., § 337, subd. 1) to three months . . . , six months . . . , or a year . . . . As provided by statute, parties to a sales contract governed by the California Uniform Commercial Code can shorten the four-year statute of limitations for breach of contract to not less than a year. (Cal. U. Com. Code, § 2725, subd. (1).)

■ "Thus, except as restricted by statute, California courts accord contracting parties substantial freedom to modify the length of the statute of limitations. As the Supreme Court has stated in permitting parties to shorten the limitations period: '. . . [S]tatutes [of limitations] are regarded as statutes of repose, carrying with them, not a right protected under the rule of public policy, but a mere personal right for the benefit of the individual, which may be waived. . . . We are unable to perceive that any distinction can be made upon the ground of public policy between the right of a party to waive the plea of the statute of limitations as a defense to an action, and his right to waive a portion of the time granted by the statute for the commencement of an action.' (*Tebbets* v. *Fidelity and Casualty Co.* [(1909)] 155 Cal. [137, 139] [99 P. 501], citations omitted.)" (*Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1547–1548 [46 Cal.Rptr.2d 33] (*Hambrecht*), fn. & some citations omitted.)

As we noted in *Hambrecht*: "Although [the Supreme Court's] waiver analysis [in *Tebbets v. Fidelity and Casualty Co., supra*, 155 Cal. 137] has

withstood the test of time, subsequent Supreme Court cases have commented that the statutes of limitations do serve public policies. . . . Of course, the statute of limitations remains a matter of 'personal right for the benefit of the individual' . . . in the sense that a defendant waives that defense by not timely raising it . . . ." (*Hambrecht, supra*, 38 Cal.App.4th at p. 1548, fn. 16, citations omitted.)

According to one treatise: "The obligor may seek special protection by incorporating provisions in an agreement that require the commencement of an action within a shorter period than that allowed by the applicable statute of limitations. . . . They are generally upheld if the shorter period is reasonable, i.e., if it *gives sufficient time for the effective pursuit of the judicial remedy.*" (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 469(1), p. 595, italics added.)

In *Moreno v. Sanchez* (2003) 106 Cal.App.4th 1415 [131 Cal.Rptr.2d 684] (*Moreno*), the purchasers of a home, the Morenos, hired an inspector, Sanchez, to inspect the home for defects before escrow closed. He reported no significant problems. The home inspection contract contained a provision stating that any lawsuit against Sanchez had to be filed within one year of the date of inspection. The inspection was conducted on August 18, 1998, and escrow closed in October of that year. In December 1998, the Morenos began feeling ill. They had the home inspected by others. One company discovered asbestos in the heating and air-conditioning ducts. Another company found an unsealed air return that permitted the heating and cooling systems to draw dust, dirt, and rust into the system and then spread them throughout the home. The Morenos filed suit against Sanchez on October 19, 1999—one year two months after the date of the inspection. The trial court sustained Sanchez's demurrer without leave to amend, finding that the Morenos did not file suit within one year after the inspection.

The Court of Appeal reversed. It found the one-year limitations provision to be unenforceable, stating: "Because of the hidden nature of these systems and components a potential homeowner may not see or recognize a home inspector's negligence, and thus may not understand he has been damaged until long after the inspection date. This fact, coupled with the trust the potential homeowners must necessarily place in the professional home inspector, compel the conclusion causes of action for breach of a home inspector's duty of care should accrue in all cases, not on the date of the inspection, but when the homeowner discovers, or with the exercise of reasonable diligence should have discovered, the inspector's breach." (*Moreno, supra*, 106 Cal.App.4th at pp. 1428–1429.) The Court of Appeal acknowledged that ". . . California courts have afforded contracting parties considerable freedom to modify the length of a statute of limitations. Courts

generally enforce parties' agreements for a shorter limitations period than otherwise provided by statute, provided it is reasonable. 'Reasonable' in this context means the shortened period nevertheless provides *sufficient time to effectively pursue a judicial remedy.* 'It is a well-settled proposition of law that the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statute of limitations, and that such stipulation violates no principle of public policy, provided *the period fixed be not so unreasonable as to show imposition or undue advantage in some way.*' " (*Id.* at p. 1430, fn. omitted, italics added; accord, *William L. Lyon & Associates, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1307 [139 Cal.Rptr.3d 670].)

■ The Court of Appeal in *Moreno* continued: "[A] contractually shortened limitations period has never been recognized outside the context of straightforward transactions in which the triggering event for either a breach of a contract or for the accrual of a right is immediate and obvious. Moreover, no decision upholding the validity of a contractually shortened limitation period has done so in the context of an action against a professional or skilled expert where breach of a duty is more difficult to detect." (*Moreno, supra,* 106 Cal.App.4th at p. 1430.) "In the present context, . . . a cause of action may not be known, or even suspected, until long after the home inspection is completed. A shortened limitations period in this context may thus foreclose an effective judicial remedy for many homeowners. For this reason, for a provision in a home inspection contract shortening the statute of limitations to be enforceable, we hold accrual of a cause of action occurs not with the inspection, but when the homeowner *discovers, or through the exercise of reasonable diligence should have discovered, the breach.*" (*Id.* at p. 1432, italics added.) "In short, no authority exists which sanctions a contractual provision permitting parties to opt out of the benefits of the discovery rule in situations where the discovery rule would otherwise apply. This suggests there exists an implicit consensus that *an effective judicial remedy against professionals or skilled crafts people* requires accrual occur *only upon discovery of the breach* and thus the law will not tolerate contractual nullification of that policy." (*Id.* at p. 1433, italics & underscoring added; accord, *Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 182–183 [51 Cal.Rptr.3d 471] [provision in attorney-client retainer agreement requiring client to challenge billing statements within 10 days of receipt declared invalid because it did not incorporate delayed discovery rule; client's breach of fiduciary duty claim was not barred by 10-day provision]; 3 Witkin, Cal. Procedure, *supra,* Actions, § 469(3), pp. 596–597 [discussing contractual provisions shortening statute of limitations and delayed discovery rule].)

Here, the one-year notice provision stated that the claiming party had to give written notice of the claim to the other party "within one year of the date the claiming party *knew or should have known of the facts giving rise to the*

*claim.*" (Italics added.) Because the provision contains language adopting the delayed discovery rule, it is valid under *Moreno* and similar cases. Contrary to Zamora's argument, a contractual notice provision is enforceable with respect to a claim against *a professional or skilled expert* as long as the provision incorporates the delayed discovery rule. (See *Moreno, supra,* 106 Cal.App.4th at pp. 1430, 1433.)

In her opening brief, Zamora states: "No reported opinion anywhere has ever enforced a contractual limitation on a corporation's ability to bring claims against officers of that corporation for breach of fiduciary duty of the type asserted here . . . ." But there is at least one decision supporting defendants' position on this issue. In *In re Brocade Communications Systems, Inc.* (N.D.Cal. 2009) 615 F.Supp.2d 1018, a corporation formed a special litigation committee to assume control of a previously filed shareholder derivative action and to pursue the action on behalf of the corporation. The suit was brought against former officers and directors who had allegedly participated in an illegal stock option backdating scheme. The original complaint contained a cause of action for breach of fiduciary duty. The committee filed an amended complaint, adding causes of action for federal securities fraud (15 U.S.C. § 78j(b)) and fraud under California law (Civ. Code, §§ 1709, 1710).

With respect to two of the directors, the district court held that a contractual provision barred the new fraud claims, explaining: "Defendants [Neal] Dempsey and [Seth] Neiman . . . argue that [the corporation] is contractually barred from asserting a fraud claim under their individual indemnification agreements. [¶] These agreements provide: [¶] 'No legal action shall be brought and no cause of action shall be asserted by or in the right of the Company against Indemnitee . . . after the expiration of two years from the date of accrual of such cause of action, and any claim or cause of action of the [corporation] shall be extinguished and deemed released unless asserted by the timely filing of a legal action within such two-year period . . . .'

"Both Delaware and California courts recognize contractual provisions shortening the relevant statute of limitations as valid and enforceable. . . .

"Here, the indemnification agreement operates to bar the fraud claims newly brought against Dempsey and Neiman. Under the contract's plain language, [the corporation] is foreclosed from asserting 'any claim or cause of action' more than two years after such claim or cause of action accrued. . . . [T]he fraud claims accrued in October 2004, at the point when the [corporation] was put on inquiry notice of the backdating scheme. No [federal securities fraud claim] or California fraud claim was asserted against these Defendants until August 1, 2008, more than four years later.

"Plaintiff argues that under *Moreno*[, *supra*,] 106 Cal.App.4th 1415 . . . , the contractual period of limitations should be tolled. Even assuming that California law applies to this matter . . . , *Moreno* merely stands for the limited proposition that a cause of action may not accrue in a suit against a home inspector until the injury is discovered. . . . Applying the discovery rule here means that the [federal securities fraud] claim accrued in October 2004, when the [corporation] was put on inquiry notice of Defendants' conduct. *Moreno* simply cannot be extended far enough to relieve [the corporation] of the indemnification it agreed to provide Dempsey and Neiman.

". . . Therefore, the claims for fraud under [federal law] and California [law] are barred by the indemnification agreement as to Defendants Dempsey and Neiman." (*In re Brocade Communications Systems, Inc., supra*, 615 F.Supp.2d at pp. 1039–1040, fns. & citations omitted.) In a footnote, the district court commented: "Because the *breach of fiduciary duty claims* were timely filed in *the original complaint*, the indemnification agreement does not apply to bar those claims here." (*Id.* at p. 1039, fn. 3, italics added.) That comment implies that if the breach of fiduciary duty claims—like the fraud claims—had been alleged for the first time in the amended complaint, they, too, would have been barred by the indemnification provision.[2]

■ We also reject Zamora's contention that a one-year notice provision cannot be included in an *employment agreement* as opposed to some other type of contract. As stated by one Court of Appeal: "[T]here is no merit in the contention that [the 30-day limitation for raising a dispute as to salary or hours] is against public policy. There is nothing in the clause which is reprehensible or tainted with improper motives. It does not provide the payment of wages lower than that provided in the collective bargaining agreement or in contravention of the wage scale therein established. It merely provides that in the event of a controversy concerning salaries or hours, a timely claim for adjustment shall be made. No dictate of public policy is violated by an agreement requiring either the employee or the employer to make a timely statement of his claim. The manifest intention of the clause is self-evident in that in the event of a controversy, the claim of either the employer or employee shall be promptly brought to the attention of the other party to insure prompt settlement and to prevent a situation such as in the case at bar—a long and secret accumulation of claims without bringing them

[2] The district court concluded that the relation back doctrine did not apply to the limitations period set forth in the indemnification agreement, stating: "[The] 'relation back' principle is of no avail to Plaintiff here, as it applies to prevent the running of a *statutory* period of limitations. Here, Defendants seek protection under a *contractual* limitation agreement. Although the two complaints share the same core operative facts, [the relation back principle] was not intended to undermine an agreement between sophisticated parties that defines the contours of their liability." (*In re Brocade Communications Systems, Inc., supra*, 615 F.Supp.2d at p. 1040, original italics.)

to the attention of the other party." (*Breitman v. Brody* (1952) 113 Cal.App.2d 642, 644–645 [248 P.2d 932]; cf. *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 117–118 [12 Cal.Rptr.3d 663] [provision in employment agreement shortening statute of limitations for *statutory* claims may be unconscionable if it prevents employee from vindicating statutory rights; contractual provision requiring that statutory claims be "asserted" within six months after claim arises is invalid].)

### 3. *Showing of Prejudice*

Zamora contends that defendants must make a showing of prejudice to enforce the one-year notice provision, relying on *Gianni v. City of San Diego* (1961) 194 Cal.App.2d 56 [14 Cal.Rptr. 783] (*Gianni*). We disagree. *Gianni* addressed the sufficiency of statutorily required notice to property owners under the Improvement Act of 1911 (Sts. & Hy. Code, §§ 5000–6750). The Court of Appeal stated that notices under the act "serve and must serve a definitely useful function, i.e., to inform the property owner that a project for the improvement of the street is planned, the general nature of the project and, where an 'official grade' has already been established, that a 'new grade' is to be used. In a case like the one here at bar, the property owners are already legally aware of the existence of an official grade. . . . The only possible purpose of the insertion of the terminology 'new grade to be established' or 'new grade to be used' is to give the property owners the additional information that such new grade might be more detrimental to their property than the official grade." (*Gianni*, at p. 63, citations omitted.)

In concluding that plaintiffs were not entitled to damages, the Court of Appeal stated: "[P]laintiffs did not even offer any evidence that the change from the 'official grade' to the grade actually used in any way detrimentally affected them. The construction of the grade . . . was shallower in depth by 2 to 6 feet than the official grade. For a notice to be factually deficient, such deficiency should in some way detrimentally affect the knowledge which the property owners were entitled by law to have. A property owner in an inverse condemnation action, in order to recover a judgment for damages, must not only show that there was actual injury to the property involved, but also legal damage." (*Gianni, supra*, 194 Cal.App.2d at p. 63.)

We fail to see how *Gianni*—which involved a statutory remedy for inadequate notice of street improvements—is relevant in construing the contractual notice provision in defendants' employment agreements. This is especially so given that the present case does not involve an alleged "factually deficient" notice—as did *Gianni*—but, instead, the failure to give defendants *any* notice that e4L had a claim against them.

■ Further, as noted, in addressing whether the contractual *notice* provision here is valid, the parties rely on case law determining whether the *statutes of limitations* can be shortened by contract. That reliance is justified: "[T]he policies to be served by a *notice-of-claim limitations period* are the same as those served by a *statute of limitations*; that is to say, each seeks to preserve a reasonable opportunity to investigate and defend." (*Talei v. Pan American World Airways* (1982) 132 Cal.App.3d 904, 909 [183 Cal.Rptr. 532], italics added.) It is well established that "[a] defendant need not show prejudice to invoke the statutes of limitations." (*Friends of Shingle Springs Interchange, Inc. v. County of El Dorado* (2011) 200 Cal.App.4th 1470, 1494 [133 Cal.Rptr.3d 626]; accord, *Schoenberg v. County of Los Angeles Assessment Appeals Bd.* (2009) 179 Cal.App.4th 1347, 1355 [102 Cal.Rptr.3d 86].) Similarly, in this case, defendants need not show that the failure of e4L or Zamora to comply with the one-year notice provision resulted in prejudice. (Cf. *Belz v. Clarendon America Ins. Co.* (2007) 158 Cal.App.4th 615, 625–626 [69 Cal.Rptr.3d 864] [if insured fails to comply with policy provision requiring prompt notice of claim to insurer, insurer must show prejudice to avoid its obligations under policy]; *UNUM Life Ins. Co. of America v. Ward* (1999) 526 U.S. 358, 363–373 [143 L.Ed.2d 462, 119 S.Ct. 1380] [Cal.'s "notice-prejudice" rule is limited to insurance context].)

Nor is *Galaviz v. Berg* (N.D.Cal. 2011) 763 F.Supp.2d 1170 on point. As the district court described that case in its opening paragraph: "May corporate directors control the venue for shareholder derivative actions brought against them by adopting a bylaw purporting to require that such cases be filed in a particular forum? Under federal procedural law that controls such venue issues, parties may enter into *contracts*—including those where elements of adhesion exist—that contain legally enforceable forum selection clauses. Even when bringing a claim under a *contract* offered on a 'take it or leave it' basis, . . . a plaintiff can be said to have consented to the forum selection clause when he or she elected to enter into that *contract*. [¶] A bylaw unilaterally adopted by directors, however, stands on a different footing." (*Id.* at p. 1171, some italics added.) Here, the dispute involves a *contract*, not a bylaw, and the parties to the pertinent contracts—the company and two of its executives—are the parties to the lawsuit. The rights unique to shareholders are of no concern.

### 4. *Zamora's Ignorance of the Notice Provision*

■ Zamora asserts that the one-year notice provision should not apply to her because she did not know about it until mid-2005. She was appointed the chapter 7 trustee on November 22, 2002. The irony of this contention is not lost on us. In opposing defendants' motion to compel arbitration—brought almost two years after this action was filed—Zamora argued that the delay in

seeking to compel arbitration was not excused by defendants' ignorance of the arbitration provision in their employment agreements. We agreed and held that Lehman and Weiss had waived their right to arbitration. (*Zamora v. Lehman, supra,* 186 Cal.App.4th at pp. 10, 12–19.) What is good for the goose is good for the gander: The law does not excuse ignorance of a contractual limitations period either. (See *Sanders v. American Casualty Co.,* (1969) 269 Cal.App.2d 306, 308–310 & fn. 2 [74 Cal.Rptr. 634] [supplier of materials to subcontractor was bound by one-year limitations period contained in "labor and material payment bond" even though supplier had no knowledge of bond or limitations period]; *Talei v. Pan American World Airways, supra,* 132 Cal.App.3d at pp. 907–910 [shipper's lawsuit against carrier was barred by notice of claim requirement contained in air tariff even though shipper lacked knowledge of notice requirement]; *USLIFE Savings & Loan Assn. v. National Surety Corp.* (1981) 115 Cal.App.3d 336, 345 [171 Cal.Rptr. 393] ["Although ignorance of the cause of a loss, or the fact that a loss has occurred, may excuse late claim filing, ignorance of policy provisions [restricting the period of coverage] does not."].)

Indeed, although Zamora became the chapter 7 trustee on November 22, 2002, she did not attempt to obtain e4L's corporate records until early April 2005, when her attorney requested them by contacting e4L's general counsel, William Matthews. In a responsive letter dated July 11, 2005, Matthews stated that his law firm had "approximately 31 bankers boxes with e4L records," and he was "in the process of retrieving the boxes from off-site storage." Zamora received the boxes in October 2005. As Zamora states in her opening brief: "It was not until mid-2005, when [I] finally received e4L's corporate records from Matthews that [I] had in [my] possession the Employment Agreements and could have known that they contained contractual limitations." Thus, Zamora waited two years four months to request e4L's corporate records. She then discovered the contractual one-year notice provision in defendants' employment agreements. As stated, the notice provision required that if either e4L or an executive had a claim against the other, written notice of the claim had to be presented to the accused party "within one year of the date the claiming party knew *or should have known* of the facts giving rise to the claim." (Italics added.) Given Zamora's delay in requesting e4L's corporate records, her ignorance of the one-year notice provision is a poor excuse for failing to comply with it.

■ Zamora is bound by the contractual notice period to the same extent as e4L. As the trustee in bankruptcy, Zamora "stands in the shoes of the debtor" and " 'is subject to all claims and defenses which might have been asserted against the bankrupt [corporation] but for the filing of the petition.' " (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 680 [35 Cal.Rptr.3d 31]; see *Weiss v. Blue Cross/Blue Shield of Delaware* (Bankr. 1st Cir. 1997) 206 B.R. 622, 625–626 [chapter 7

trustee's lawsuit to recover benefits owed debtor under health insurance policy was barred by policy's two-year limitations period notwithstanding Delaware's three-year statute of limitations for breach of contract claim].) It follows that Zamora had to give written notice to defendants that e4L had a breach of fiduciary duty claim against them, and the notice had to be provided within one year after she discovered or *should have discovered* the facts giving rise to the claim.

Nothing in *City of Oakland v. Carpentier* (1859) 13 Cal. 540 is to the contrary. That decision did not concern a provision either requiring written notice of a claim or shortening the statute of limitations. Rather, the Supreme Court examined the running of the statute of limitations with respect to wrongdoing by a city's board of trustees where all or a majority of the trustees were corrupt. In that situation, "the Statute of Limitations would not begin to run until after the corporation thus defrauded, got out of the hands of the confederates, and an opportunity were afforded innocent agents coming to the management of the affairs of the town, to look into and ascertain the true state of things. Knowledge on the part of the guilty agents of the corporation of the criminal fact is not notice to the corporation of such fraud . . . ." (*Id.* at p. 552.) Here, we are not deciding what type of event would trigger the contractual one-year notice period. The notice provision itself states that the one-year period begins to run on "the date the claiming party knew or should have known of the facts giving rise to the claim." Because we have concluded the notice provision is valid (see pt. IIA.2., *ante*), the remaining question is one of fact: whether defendants were presented with notice that e4L had a breach of fiduciary duty claim against them within one year after e4L or Zamora, as the trustee in bankruptcy, knew or should have known the facts giving rise to the claim. *Carpentier* sheds no light on that determination.

## B. *Compliance with the Contractual Notice Period*

Zamora contends there are disputed issues of material fact regarding whether e4L gave defendants one year's notice of the breach of fiduciary duty claim. The trial court examined this issue in detail and concluded that notice was not provided. We have quoted the trial court's analysis at length (see pt. IC., *ante*), and adopt it as our own. To summarize, it is undisputed that before Zamora became the chapter 7 trustee, e4L did not give defendants written notice that the company had a breach of fiduciary duty claim against them. And Zamora did not provide the requisite notice after she became the trustee on November 22, 2002. The complaint alleged that *e4L became aware of the facts underlying the breach of fiduciary duty claim on November 22, 2002.* The one-year notice period therefore expired on November 22, 2003. Zamora did not notify defendants in writing that e4L had a breach of fiduciary duty claim against them on or before November 22, 2003—*one year after she*

*became the chapter 7 trustee and e4L discovered the facts giving rise to the claim.* Consequently, under the contractual notice provision, the breach of fiduciary duty claim was "waived and forever barred."

Thus, the trial court properly granted defendants' motion for summary judgment.

## III

## DISPOSITION

The judgment is affirmed.

Rothschild, J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 19, 2013, S210032.